# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Cody Reed Shumway

February 12, 2007

Case No. (Criminal) CR06-2141

BY JUDGE CHARLES E. POSTON

This matter is before the Court upon the Defendant's motion *in limine* in which he asks the court to determine "whether involuntary intoxication is a separate and independent defense or is simply party of the more common temporary insanity defense." The court holds that involuntary intoxication is a criminal defense separate and distinct from the temporary insanity defense.

*Factual Background*

For purposes of this motion, the facts are largely undisputed. During the evening hours of April 19, 2006, the Defendant arrived at a party of local college students. Various alcoholic and non-alcoholic drinks were available for the party-goers. The Defendant remembers ingesting a drink at the party, and his next memory is awaking in the Norfolk City Jail. He asserts that he awoke with a severe headache and nausea. Upon his release, the Defendant went to the Portsmouth Naval Hospital where a urine screen was performed. Among the information gleaned from that test was the presence of benzodiazepines in his system.

482

This substance, the Defendant asserts, is present in a number of legal drugs sold in the United States. It is also found in some illegal substances, one of which is Flunitrazepam, a drug with various street names. Flunitrazepam is widely known as a "date rape" drug and is often delivered to the victim in a drink. This drug is odorless, tasteless, and colorless and has several well-known side effects, among which are drowsiness, loss of motor control, slurred speech, amnesia, gastrointestinal disturbances, and confusion. The Defendant states that he exhibited all of these side effects when arrested.

After leaving the party, the Defendant struck two vehicles in an apartment complex's parking lot. When the police arrived, the Defendant was seated on the curb next to his vehicle that was too badly damaged to drive. His nose was bleeding, and he told the police officer that he had consumed two beers earlier that evening, the last of which he drank about two hours earlier. Because he was too intoxicated to perform field sobriety tests, the police officers arrested him and administered a breath test upon arrival at the Police Operations Center. His blood alcohol content was .07.

The Defendant asserts that he had unknowingly consumed a drink containing benzodiazepines causing him to exhibit symptoms consistent with intoxication. He bases his defense on involuntary intoxication. Without conceding that the Defendant's intoxication was involuntary, the Commonwealth argues that involuntary intoxication is not an independent defense but is, rather, simply a defense of temporary insanity. The court disagrees.

### Legal Findings Regarding Involuntary Intoxication

Involuntary intoxication is an exception to the general rule that intoxication does not excuse a crime. *Johnson v. Commonwealth*, 135 Va. 524, 533, 115 S.E. 673, 676 (1923). "Intoxication is involuntary when drunkenness is produced in a person without his willing and knowing use of intoxicating liquor, drugs, other substance." 2-53 *Virginia Model Jury Instructions – Criminal*, Instruction No. 53.300 (2006).

The involuntary intoxication defense has two parts. First, the defendant must have been unconsciously or unwillingly intoxicated. According to the Supreme Court of Virginia, the "test of involuntary drunkenness, and the one almost if not quite universally found in the authorities, is the absence of an exercise of independent judgment and volition on the part of the accused in taking the intoxicant – as for example, when he has been made drunk by fraudulent contrivance of others, by casualty, or by error of his physician." *Johnson v. Commonwealth*, 135 Va. at 536. Second, involuntary intoxication

only "exempts from punishment, if it unsettles the reason." *Id.* at 534 (*citing* Minor, *Synopsis of Criminal Law*). *See also, Director of the Department of Corrections v. Jones*, 229 Va. 333, 339, 329 S.E.2d 33, 37 (1985) (jury instruction in the lower court stated: "if you believe that Joseph Jones: (1) was unwillingly and unknowingly drunk by the fraudulent contrivance of others, and (2) the drunkenness so unsettled his ability to reason as to prevent him from exercising his own free will, then you cannot find him guilty.").

In Virginia, as well as other states, involuntary intoxication and insanity are separate defenses. The Supreme Court of Virginia acknowledged three possible forms of the intoxication defense in *Johnson v. Commonwealth*. 135 Va. at 528-533. *See also*, Roger Groot, *Criminal Offenses and Defenses in Virginia*, 325 (4th ed. 1998) ("In its leading case, *Johnson v. Commonwealth*, the Supreme Court recognized three possible forms of an intoxication defense."). The three forms are as follows: (1) voluntary intoxication, (2) involuntary intoxication; (3) "settled insanity produced by drink." *Id.*

Virginia case law and legal treatises treat the insanity and involuntary intoxication defenses as separate defenses. *See e.g., Honesty v. Commonwealth*, 81 Va. 283, 283 (1886) (explaining that, for both the insanity and intoxication defenses, the defense must show both the condition and that his condition rendered "him incapable of doing a willful, deliberate, and premeditated act."); *Baccigalupo v. Commonwealth*, 74 Va. 807, 807 (1880) (referring to the two defenses separately). For example, *Criminal Offenses and Defenses in Virginia* lists intoxication and insanity as separate defenses. *See* Groot, *supra*, at 301 and 325 (1998). *See also*, 1-31 *Virginia Criminal Law and Procedure*, §§ 31.3 and 31.4 (2005) (the treatise separates the insanity defense (31.4) from the involuntary intoxication defense (31.3)).

The two defenses are very similar, however. For the involuntary intoxication defense, the Defendant must show that "his inability to control his conduct meets the M'Naghten test for insanity." 1-31 *Virginia Criminal Law and Procedure* § 31.3 (2005). Indeed, "[m]ost jurisdictions have adopted the M'Naghten test, under which the Defendant must prove that, as a result of a mental disease, he did not know the nature of the act or that the act was wrong." *Id.* "Thus, under the modern definition of involuntary intoxication, the only difference between the definition of this defense and insanity is the cause of the condition. 'For the former, a mental disease or defect is required, for the latter, involuntarily caused intoxication'." Shawn Marie Boyne & Gary Mitchell, *Death in the Desert: A New Look at the Involuntary Intoxication Defense in New Mexico*, 32 N.M. Law Rev. 243, 254 (2002).

The burden of production and persuasion is much lighter for the involuntary intoxication defense than the insanity defense. For the intoxication defense, the Defendant need only introduce "evidence sufficient to warrant an instruction" to satisfy his burden of production and persuasion. 1-60 *Virginia Criminal Law and Procedure* § 60.4 (2005). In contrast, for the insanity defense, the Defendant must establish the defense to the "satisfaction of the fact finder." *Id*. A possible explanation for this disparity is that "it is within the experiential understanding of most jurors to understand how intoxication affects one's thinking. Boyne & Mitchell, *supra*, at 255. However, jurors have less experience with the level of mental illness that satisfies the legal definition of insanity." *Id*.

The Court concludes that the involuntary intoxication defense is a separate affirmative defense from the insanity defense. In turn, the Court sustains the motion *in limine*.